Plaintiff brings this suit for compensation against his employer and its insurer, alleging permanent total disability as the result of injuries suffered following an accident sustained September 3, 1941.
While working in the course of his employment on the date set forth, plaintiff sustained a fall from the tram-table to the floor, a distance of about three feet. He was assisted to rise by a fellow worker and then he reported to the foreman that he had been injured, whereupon he was directed to report to the company doctor, Dr. Walsworth. Plaintiff walked to his home, and after a brief delay walked to the doctor's office, a total distance of approximately a mile or better, where he was examined. At the time he reported to the doctor, plaintiff complained of injuries to his left arm and ankle, and a pain in his back just beneath the shoulder blade on the left side. The doctor found nothing to indicate any serious injury, but, nevertheless, prescribed for the patient and certified him for compensation with a prognosis of two to four weeks disability. As a matter of fact, disability was actually paid for sixteen weeks, after which time payments were stopped.
There was judgment rejecting plaintiff's demands, from which judgment he prosecutes this appeal.
There is no dispute as to the facts of employment, accident and a resulting injury, but there is the customary violent difference of opinion as to the nature, extent and character of the injuries. Plaintiff *Page 492 
contends that he is suffering from total disability as the result of back injuries sustained in the fall. In support of this contention plaintiff offered in evidence x-rays taken by his physician, Dr. C.H. Mosley, in January, 1942. Dr. Mosley testified, on the basis of his interpretation of the four x-ray photographs which he had made, that plaintiff had a badly curved spine, so crooked that it was difficult to understand how he could get around and perform any manual labor. In addition to the curvature he found a diseased condition of the sacroiliac joint, a crushing of the fifth lumbar vertebra on the right side, an extremely bad alignment of the fourth lumbar vertebra, and a slight fracture, together with an impacted fracture, of the joint between the third and fourth lumbar vertebra.
Based upon these observations, and upon certain symptoms both subjective and objective, it was the conclusion of Dr. Mosley that plaintiff suffered from total permanent disability resulting from trauma, and, considering the history of the case, it was his opinion that the accident of September 3rd was undoubtedly the cause of the disability.
The conclusions drawn by Dr. Mosley were substantiated by the testimony of Dr. C.P. Gray, who was called into consultation, and who made an examination of plaintiff in March, 1942, and who studied the x-ray pictures made by Dr. Mosley.
As opposed to the testimony of the medical experts appearing in behalf of plaintiff, the defendant offered the testimony of four equally distinguished physicians, two of whom were specialists in x-ray work.
The record shows that plaintiff had sustained an accidental injury on March 24, 1939, and that compromise settlement was made with the approval of the Court between the employer and the employee. The injury complained of at the time was a lumbar sacro-sprain of the back, and on May 12, 1939, x-ray pictures were made of plaintiff by Dr. D.M. Moore.
On trial of this case there was some appreciable degree of ill-feeling displayed by opposing counsel and certain of the medical experts with reference to an attempt that had been made by plaintiff to procure the x-ray plates taken by Dr. Moore in 1939 before trial of the case. The introduction of the x-rays made in 1939 was strenuously opposed by counsel for plaintiff on grounds of prejudice, extension of pleadings, etc. As a matter of fact, the photographs in question were introduced on trial of the case on April 27, 1942, the trial was continued and evidence closed on May 25, 1942, so that plaintiff's experts were allowed practically a month's time in which to make an examination of the x-rays in question. We feel it is significant that upon resumption of trial on May 25th, Dr. Mosley was recalled, but save for a cursory reference to the x-rays made in 1939, he made no attempt at a detailed discussion. An additional medical witness called in rebuttal by plaintiff, Dr. D.I. Hirsch, was questioned as to whether he had examined the x-rays, including those made in 1939, to which question he answered affirmatively, but no testimony was requested from nor offered by him as to his findings resulting from the examination of the x-rays.
The only question before this Court is one of fact, as to whether plaintiff at the time of trial was disabled, and, if so, whether the disability was caused or aggravated by the accidental injury suffered in the course of his employment.
It is too well-established to necessitate citation of authorities that plaintiff must make out his case beyond a mere possibility or probability of a causal connection or aggravation of disabling injuries.
In the case before us, the theory of the defense seeks to establish the fact that plaintiff suffers from a congenital abnormality. All of defendants' medical witnesses, including two distinguished specialists in roentgenology, testified that the x-rays taken in 1939 and the x-rays taken in 1942, upon comparison, exhibited the same defects, and that the latter x-rays disclosed no progression or exaggeration of the spinal formation, which would indicate the existence of any disability more pronounced than was the case in 1939.
There is no serious conflict of opinion between the experts of plaintiff and defendants as to the conclusion that plaintiff suffered from curvature of the spine. It is urged on behalf of plaintiff that this abnormal curvature was not disabling until injuries resulting from the accident caused an exaggeration of the deformity to such extent as to render plaintiff totally disabled from the performance of manual labor.
After trial in the district court there was judgment in favor of defendants. The trial Judge, Hon. J.T. Shell, did not render judgment, and by an agreement the case was submitted to the Hon. D.I. Garrett who rendered judgment without assigning written reasons. *Page 493 
In our opinion plaintiff has not discharged the burden of proof by a preponderance of evidence establishing the existence of disability.
Though there is some testimony as to objective symptoms which would tend to prove disability, there is not sufficient weight to overcome expert testimony to the contrary. As to the subjective symptoms, while we are not satisfied that plaintiff is guilty of malingering, we are convinced that he has greatly exaggerated the effect of his injuries. It is contrary to all reason to conclude that a man who has suffered the crushing of a lumbar vertebra, an accompanying fracture of other vertebra, and a serious dis-alignment of another, as the result of traumatic injury, would be able to undertake the physical exertion of walking a distance of more than a mile immediately following the accident. The record shows conclusively that plaintiff frequently walked from his home to the doctor's office in the course of the weeks following the injury, and, while there is some testimony on the part of lay witnesses, close friends of plaintiff, that he was bedridden, we do not find this testimony to be very persuasive, much less conclusive.
After a careful consideration of the facts in this case, and an analysis of the expert testimony, we have reached the conclusion that plaintiff was not disabled at the time of trial, either as a direct result of the injuries sustained in the accident complained of, or by indirect contribution to a preexisting congenital malformation.
The judgment appealed from is affirmed.