Hardy JOHNSON, Appellant,

v.

Theodore BRITTON, Deputy Commissioner, Bureau of Employees' Compensation, United States Department of Labor, et al., Appellees.

No. 16025.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 15, 1961.

Decided March 30, 1961.

---

Mr. Philip J. Lesser, Washington, D. C., with whom Mr. I. Irwin Bolotin, Washington, D. C., was on the brief, for appellant.

Mr. Herbert P. Miller, Asst. Sol., Department of Labor, with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee Britton.

Mr. M. S. Mazzuchi, Washington, D. C., for appellees, Aetna Casualty & Surety Company and Everett T. Greenstreet.

Before FAHY, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from a judgment of the District Court granting defendants' (appellees') motion for summary judgment against plaintiff (appellant) and dismissing plaintiff's complaint filed to set aside in part a compensation order issued by defendant, Deputy Commissioner, Bureau of Employees' Compensation.

The facts, which are not in dispute, disclose that on August 21, 1957, plaintiff was in the employ of the employer named as intervenor in this suit; that on that date, while performing service for the employer as a laborer and while engaged in loading cinder blocks onto a conveyance known as a scooter, plaintiff twisted his back while lifting two cinder blocks, as a consequence of which he suffered trauma to the lower part of his back, including sprain of the lumbar region of the back; that the injury arose out of and in the course of his employment; that the employer furnished plaintiff with certain medical treatment and care required as a result of the injury; and that plaintiff received other treatment at the hands of physicians of his own choice, without the prior knowledge or consent of the employer.

Plaintiff was employed on a 5-day week basis and received an hourly wage. With respect to his wages, on which the disability payments provided in the compensation order were based, plaintiff introduced into evidence as his Exhibit No. 1 a schedule of weekly earnings. This

exhibit showed that when he worked his hourly wage was $2.35 and that his daily wage was $18.80. Out of the fifty-two weeks of the year preceding his injury, plaintiff had worked a total of 180 days. It was stipulated between the parties that this "represents substantial employment with this employer during the year and that the days not worked were probably due to weather or unavailability of work and that this probably represents a typical employee." No other work records for prior years were introduced or received in evidence, and, at the hearing before us, it was agreed that the year in question was a typical year in the construction industry as there were days when plaintiff did not work because of inclement weather and unavailability of work, two conditions recurring frequently in construction work. It was also agreed that in the year in question plaintiff had received $3112.66 from intervenor herein and, from other employment, $287.10, or a total compensation of $3399.76 for that year.

The Deputy Commissioner concluded that at the time of the injury plaintiff's average weekly wages were $65.38 (⅟₅₂ of $3399.76) and, there having been a 25% permanent partial disability, fixed his reduced weekly wage-earning capacity at $49.03. The temporary total disability payment rate was fixed at $43.59 per week (66⅔% of $65.38) and the permanent partial disability rate at $10.90 per week (66⅔% of $16.35, this latter figure being the difference between plaintiff's average weekly wages at the time of the injury and his reduced weekly wage-earning capacity after the injury).

## I

Plaintiff contends on this appeal that the Deputy Commissioner did not properly apply the statutory method in computing his wages but merely divided by fifty-two the amount of plaintiff's wages during the year preceding the injury. Plaintiff contends that the statute [Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950] demands that the basis of compensation be controlled by Sec. 10(a) of the Act [33 U.S.C.A. § 910(a)], which reads:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary for a six-day worker and two hundred and sixty times the average daily wage or salary for a five-day worker, which he shall have earned in such employment during the days when so employed."

■ We think, however, that the Deputy Commissioner correctly applied Sec. 10(c) [33 U.S.CA. § 910(c)], which reads:

"(c) If either of the foregoing methods of arriving at the average annual earnings of the injured employee *cannot reasonably and fairly be applied,* such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee." [Emphasis supplied.]

To hold otherwise than as provided in Sec. 10(c) would, in our opinion, give rise to an unfair and inequitable result. Certainly it would be inequitable to compensate the employee on the basis of a theoretical wage-earning capacity where there is substantial evidence, introduced by the employee himself, to show his ac-

tual wage-earning capacity. If plaintiff's theory were to be applied the computation would be made as follows: An employee on a 5-day week would of course not work on Saturdays or Sundays (a total of 104 days without even making allowance for legal holidays). Deducting 104 from the 365 days of the year leaves 261 days which is one day more than the maximum allowed by the statute for an employee whose employment permits him to work five full days every week. Other unusual results could ensue if plaintiff's reasoning were to prevail—results which should not be permitted to follow unless the language of the statute specifically requires it. We think the Deputy Commissioner's reliance on Sec. 10(c) is proper.

A case surprisingly akin to the present one is that of Andrew F. Mahony Co. v. Marshall, D.C.Wash.1931, 46 F.2d 539, affirmed 9 Cir., 1932, 56 F.2d 74, which considers Sec. 10, subdivsions (a), (b) and (c). There the employee, a longshoreman, was shown to have been ready, able and willing to work whenever work was available; however, he had worked only 182 days during the year. The Deputy Commissioner awarded compensation as if the employee had worked 284 days, or substantially a whole year. In upholding the District Court, which had reversed the Deputy Commissioner, the appellate court quoted the District Court (Judge Neterer):

"'While the finding is that the claimant was subject to call, ready and willing and able to work, but that he was not called, the record shows that work was necessarily discontinuous, dependent upon certain conditions indeterminable in advance, because of lack of employment, and, especially from the middle of May until the fore part of August the work was slack. This, from the record, appears to be a fixed condition. It is an incident of this employment, of which the claimant was advised, and the claimant took the risk of the recognized incidents as to the work in normal conditions, and consideration must be given to that normal equation. This is not an employment of "clock" or "whistle," but of recognized intermittence, with the element of discontinuousness, that claimant was paid only when he worked, and his wages when he worked must compensate for the time he did not work, and, if injured, shall be paid on a basis of 66⅔ per centum of his "annual average earnings." It could not have been the purpose or intent of the Congress, in view of the construction placed upon the act by the court of states from which the act in issue was largely taken, and the "due process" and "equal protection" clauses of the Constitution and the provisions of section 10, subdivisions (a), (b) and (c), 33 U.S.C.A. § 910(a–c), to apply the "300 rule" to this claimant upon the record in this case, when the average earning capacity is known, no interruptions of earnings being occasioned by illness or injury. These subdivisions are merely rules by which the "annual earning capacity" may be gauged when actual earnings in normal conditions cannot be computed. The readiness, willingness, and fitness of the claimant for work does not require the employer to insure work. These conditions the claimant voluntarily accepted with the wage as satisfactory when well, and, when injured, may not be paid under the provisions of the act more than he earned.'" 56 F.2d at pages 77–78.

The appellate court concluded:

"To arrive at its proper meaning and application, section 10 (33 U.S.C.A. § 910) must be taken in its entirety and its true meaning be ascertained by giving due weight and consideration to all parts of the section in the light of the general aims and objects of the statute taken as a whole. The section does not provide that every case must be measured by subdivisions (a) or (b)

if it be possible to force the transaction into the formulae which those subdivisions prescribe and that subdivision (c) is to be applied only to cases which cannot be measured by (a) or (b). On the contrary, it provides that subdivision (c) is to be employed whenever (a) or (b) cannot reasonably and fairly be applied. The numerous authorities discussed and cited by Judge Neterer in his opinion establish overwhelmingly that subdivisions (a) and (b) cannot be reasonably and fairly applied to an industry where employment is casual, irregular, seasonal, intermittent, and discontinuous. Surely it is not reasonable or fair to apply subdivisions (a) or (b) when to do so would result in ascertaining a mere theoretical earning capacity, having no regard to the actual facts of the case, but which would award arbitrarily to an injured laborer disability compensation in excess of what he was able to earn if at work, as shown by earnings, as in this case, covering a period of 3 years next preceding his injury. Compensation acts, to be within constitutional limits, must not be arbitrary, unreasonable, or fundamentally unjust or oppressive." 56 F.2d at page 78.

Cf. Baltimore & O. R. Co. v. Clark, 4 Cir., 1932, 59 F.2d 595; Charles Nelson Co. v. Pillsbury, D.C.Cal.1931, 48 F.2d 883, affirmed 9 Cir., 1932, 56 F.2d 80.

█ Plaintiff has cited us to no federal cases bearing on the subject which have ruled in accordance with his argument, but he urges that somewhat similar statutes in various states have been so applied. We think the federal cases are more persuasive, especially since they are based on the same statute as that here involved. In addition, we think Sec. 10(c) was designed for situations such as this, where use of the Sec. 10(a) formula would result in a highly distorted earnings figure.

It appears to be the consistent practice of the Deputy Commissioner to compute weekly wages in the manner in which he made the computation in this case. Certainly this method has been used in all cases where work is seasonal and intermittent because of inclement weather, as in the construction industry, where payment is made by the hour and employment is on a day to day basis.

█ We should add a further word on the matter of the administrative construction of the Deputy Commissioner, a construction that has been consistently followed by him. It is well settled that construction of a statute by the agency administering it, while not controlling, is entitled to weight as an aid to the courts in construing such statute. See, e. g., Truck Drivers & Helpers, etc. v. N. L. R. B., 1957, 101 U.S.App.D.C. 420, 249 F.2d 512, certiorari denied 1958, 355 U.S. 958, 78 S.Ct. 543, 2 L.Ed.2d 533; Baltimore & Ohio R. Co. v. Jackson, 353 U.S. 325, 77 S.Ct. 842, 1 L.Ed.2d 862, rehearing denied 1957, 354 U.S. 943, 77 S.Ct. 1391, 1 L.Ed.2d 1542; West Texas Utilities Co. v. N. L. R. B., 1950, 87 U.S. App.D.C. 179, 184 F.2d 233, certiorari denied 341 U.S. 939, 71 S.Ct. 999, 95 L. Ed. 1366, rehearing denied 1951, 342 U.S. 843, 72 S.Ct. 21, 96 L.Ed. 637; Hamilton Nat. Bank of Wash. v. District of Columbia, 85 U.S.App.D.C. 109, 176 F.2d 624, certiorari denied 1949, 338 U.S. 891, 70 S.Ct. 241, 94 L.Ed. 547.

## II

█ The second point raised by plaintiff is that the District Court should have reversed the Deputy Commissioner's holding that plaintiff was not entitled to reimbursement for the medical treatment and care obtained from his private physician. Sec. 7 of the Act provides that no such claim for medical or surgical treatment shall be valid and enforceable against an employer unless, within twenty days following the first treatment, a report of the treatment prescribed is furnished by the physician to the employer and to the Deputy Commissioner on a form prescribed by the Commission. While the Deputy Commissioner may excuse failure to file such a re-

port, this is a matter within his discretion. A report not having been filed in the instant case, and the failure to file not having been excused, it follows that the employer is not liable for this additional care and treatment, and that the Deputy Commissioner was correct in so ruling.

Affirmed.

FAHY, Circuit Judge (concurring in part, dissenting in part).

I agree with the opinion of the court in rejecting appellant's claim that he was entitled to reimbursement of certain medical expenses.

As to the amount of compensation awarded I do not agree. It appears that during the period of one year next preceding the injury appellant worked about 196 days during more than 43 weeks. The total possible days of employment for a five-day week were 261. Because of the nature of appellant's employment, which was on outside construction jobs, somewhat less than fifty per cent of his working time consisted of five-day weeks, the balance consisting of three or four days, or two days, or even one day a week.

The decisive factor I think is that appellant worked throughout the year at employment which continued throughout the year; that is, the employment was not seasonal. The Deputy Commissioner found that the days not worked were when work was unavailable or could not be performed due to inclement weather. The Deputy Commissioner also found that the employment was "continuous."

It seems to me that in the above circumstances the position supported by the weight of authority,[1] albeit state court decisions under state statutes, is that appellant's compensation should have been computed under section 10(a) of the Act[2] on the basis that he was employed during "substantially the whole

of the year immediately preceding his injury." Since section 10(a) could reasonably and fairly be applied there was no occasion for the Deputy Commissioner to resort to section 10(c).

It is well settled that doubts such as might be thought to exist here should be resolved favorably to the employee. Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 206 F.2d 435, certiorari denied 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400; Travelers Ins. Co. v. Donovan, 95 U.S. App.D.C. 331, 221 F.2d 886. Even without this rule of construction my view would be the same.

---

1. E.g., Stines v. Farmers Lumber & Supply Co., Iowa 1960, 100 N.W.2d 415; Jarrell v. Travelers Ins. Co., 1951, 218 La. 531, 50 So.2d 22; Romig v. Champion Blower & Forge Co., 1934, 315 Pa. 97, 172 A. 293.

2. Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 (1927), 33 U.S.C. §§ 901–950 (1958), 33 U.S.C.A. §§ 901–950.